KATE D. FUNK, Appellee, v. ANCHOR FIRE INSURANCE COMPANY, Appellant.

**INSURANCE:** Insured Not "Unconditional and Sole Owner"—
1 Knowledge—Waiver—Estoppel. An insurance company that issues a policy to one who has an insurable interest in the property, but who, it knows, is not the "sole and unconditional" owner, and collects the premium and later makes the policy

payable to a mortgagee, knowing that the mortgagee was taking the policy as security for a loan, waives absolutely, and is estopped to insist on, the provision of the policy that the "policy shall be void if the interest of the insured be other than unconditional and sole owner."

INSURANCE: Condition of Title—Knowledge of Company through Agent—Sufficiency of Evidence. A finding that an insurance company had knowledge of the actual ownership of insured property is justified by a showing that the agent of the company (a) took the acknowledgment of the deed which showed the condition of the title and (b) prepared for the actual owner, and had in his possession, an abstract of title to the property showing the actual ownership.

INSURANCE: "Insurable" Interest—Homestead in Property. A homestead interest in property is an insurable interest.

INSURANCE: Forfeiture—Foreclosure "With Knowledge of Insured"—Service by Publication—Strict Construction of Policy. A policy of insurance, payable to a mortgagee, is not voided under a clause providing that "if, with the *knowledge of the insured*, foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy, by virtue of any lien . . . thereon, this policy shall be void," when, in the foreclosure proceedings and sale, service on the insured was by *publication* only. Constructive notice is not "knowledge" within the meaning of the policy.

INSURANCE: Forfeiture under Mortgage Foreclosure Clause—Consent to Mortgage—Effect. A forfeiture of a policy of insurance cannot be predicated on a provision that the policy is voided, "if foreclosure proceedings be commenced . . . by virtue of any lien . . . " on the property, when the foreclosure complained of was of a mortgage to which the insurance company had consented.

INSURANCE: Forfeiture—Prohibited Change of Possession—Tenant. The fact that there is some shadowy showing in the record that a party was in possession, at one time, of the insured premises, possibly as a tenant, is wholly insufficient on which to base a forfeiture under the clause of the policy that "if any change other than by death of the insured takes place in the possession of the property . . . the policy shall be void."

*Appeal from Muscatine District Court.*—HON. A. P. BARKER, Judge.

FRIDAY, SEPTEMBER 24, 1915.

ACTION by mortgagee on a policy issued to mortgagor and made payable to mortgagee as her interest might appear. Judgment and decree in the court below for the plaintiff. Defendant appeals.—*Affirmed.*

. *E. M. Warner,* and *E. F. Richman,* for appellee.

*Sullivan & Sullivan,* for appellant.

GAYNOR, J.—This action is brought by the plaintiff against the defendant company upon a certain policy of insurance, issued on the 28th day of November, 1904, in which defendant company undertook to and did insure, by the terms of the policy, the premises in controversy against loss by fire for the term of five years. The plaintiff bases her right to recover from the company upon the following facts, which are not disputed in this record:

On the 3d day of June, 1905, she loaned to one Lulu R. Henning $550.00, and took a mortgage upon the premises insured to secure the loan. At the time the loan was made by the plaintiff to Mrs. Henning, the policy in controversy was delivered to the plaintiff by one H. H. Arnold, with the following endorsement upon it:

"Permission is granted for encumbrance upon the real property insured in this policy not to exceed the principal sum of $550.00 and loss, if any, is made payable first to Kate D. Funk, of Muscatine, Iowa, mortgagee, (or trustee), as her interests may appear, subject to the conditions of this policy.

"Attached to and made a part of policy No. 49832, of the Anchor Fire Insurance Company, of Des Moines, Iowa, this 28th day of November. (Signed) H. H. Arnold, Agent."

The property covered by said policy and by said mortgage was totally destroyed by fire on the 9th day of February,

1908. Due notice of loss was given as required by the terms of the policy.

The defendant interposes certain defenses to plaintiff's right to recover.

1. That the policy in question was issued to W. F. Henning, who stated that he was the unconditional and sole owner of the property, and that the defendant had no knowledge that he was not the owner, until long after the destruction of the property by fire; that he was not in fact the owner at the time the policy was issued; that the property was owned by his wife, Lulu R. Henning; that W. F. Henning wrongfully and fraudulently concealed this fact from the defendant; that the policy provided by its terms: "This policy shall be void . . . if the interest of the insured be other than unconditional and sole owner"; that the said W. F. Henning was not the sole and unconditional owner of the premises at the time the policy was issued nor at the time the loss occurred; and that, by reason thereof, the policy was not in force at the date of the destruction by fire.

1. INSURANCE: insured not "unconditional and sole owner": knowledge: waiver: estoppel.

2. The defendant alleges, as a complete defense to plaintiff's claim, that the contract of insurance further provided: "Or if any change, other than by death of the insured, whether by legal process, judgment, voluntary act of the insured, or otherwise, take place in the possession, or in the interest or title of the insured in or to the property covered by the policy . . . or if, with the knowledge of the insured, foreclosure proceedings be commenced; or notice given of the sale of any property of this policy by virtue of any lien or incumbrance thereon, this policy shall be void."

That, after the issuance of the policy and before the destruction of the property by fire, this plaintiff commenced a suit against W. F. and Lulu R. Henning upon a certain mortgage upon the premises covered by the policy, and judgment was rendered in foreclosure proceedings against W. F. Henning and Lulu R. Henning and a decree of foreclosure entered,

and sale made under special execution, and possession of the property taken by the plaintiff herein; that this defendant had no notice or knowledge of the foreclosure proceedings until after the destruction of the property; that by reason of this fact the policy, by its terms, became void, and was not in force at the date of the destruction of the property.

Plaintiff in reply pleads an estoppel and says that H. H. Arnold was the agent of the defendant and issued the policy and knew, at the time the policy was issued, that the property belonged to Lulu R. Henning; and that, with full knowledge of this fact, he issued the policy to W. F. Henning; that with full knowledge of the fact that the property belonged to Lulu R. Henning, he undertook, as agent of defendant company, to issue insurance that would protect the plaintiff's mortgage interest, and delivered to the plaintiff the policy in suit, both as the agent of the defendant and of Lulu R. Henning, and the plaintiff accepted and relied upon the same. Plaintiff denies that W. F. Henning made any representations to the defendant as to his ownership of the property, or that he fraudulently concealed the knowledge of the exact title at the time the policy was issued.

Upon the issues thus tendered, the cause was tried to the court, and judgment and decree entered for the plaintiff as prayed. From this judgment, the defendant appeals.

The facts disclosed by the record appear to be substantially as follows:

W. F. Henning and Lulu R. Henning were husband and wife, and resided upon the property in controversy as their homestead. Prior to the 2nd of August, 1902, the title to the property was in W. F. Henning. On that day, he conveyed the title to his wife, Lulu R. Henning. The title continued in her until the 11th day of November, 1908. On the 28th day of November, 1904, defendant company issued this policy of insurance to W. F. Henning for the sum of $500 for the term of five years. On the 3d day of June, 1905, the

plaintiff made a loan of $500 to Lulu R. Henning, the note being signed by Lulu R. Henning and her husband, W. F. Henning, and the same was secured by a real estate mortgage on the homestead. At the time said loan was made, some controversy arose as to whether or not the real estate, independent of the building thereon, was sufficient security for the loan, and the plaintiff was informed that there was a policy of insurance upon the building on the premises. At the time the loan was made and the mortgage executed, the policy in controversy, with the mortgage clause endorsed, was delivered by one H. H. Arnold to Mr. E. F. Richman, the attorney for the plaintiff, in the presence of Mrs. Henning, and the policy continued in the possession of Richman, as attorney for plaintiff, up to the time of the commencement of this trial. The lot on which the insured building stood was worth not to exceed $200. Upon making the loan, Richman, representing the plaintiff, went to see the property. Richman testifies:

"The application for the loan from Mrs. Funk to the Hennings came from H. H. Arnold. He was a loan agent. He represented that he had an application for a loan, but had no funds, and wanted to know if I could make it. I told him if the security was satisfactory I would do so. I went to see the property. The lot itself was probably not worth more than $200. Without the insurance on the house, the security would not be sufficient. Arnold told me there was insurance upon the property to the amount of $500, but did not say in what company. The day the loan was closed up, Arnold brought Mrs. Henning and her husband to my office to close the loan. The policy was delivered to me by Arnold in the presence of Mrs. Henning, with the mortgage clause attached."

Richman was attorney for Mrs. Funk at the time. There is no evidence that there was anything said by W. F. Henning or his wife, touching the ownership of the property, to the

defendant company or to anyone representing the defendant company at any time. There is no evidence that W. F. Henning said that he was the owner of the property absolutely, qualifiedly or otherwise. There is no evidence that he concealed from the defendant, or its representatives, the title to the property. There is no evidence of what occurred, or what was said at the time the policy in question was issued, touching the title to this property. It appears, however, that Lulu R. Henning was in fact the owner; that W. F. Henning was her husband that, as such, he had an insurable interest in the property; that the only interest, however, which he had in the property was the homestead right.

While there is no direct evidence of the fact, we think it cannot be disputed, under this record, that H. H. Arnold was the agent of the defendant company at the time this policy was issued, and at the time it was turned over to the plaintiff's attorney with the mortgage clause attached. At the time the policy was issued, it was countersigned by H. H. Arnold, as agent. At the time the mortgage clause was attached, his name appears as agent, immediately following the mortgage clause. At the time this trial was had he was dead. Lulu R. Henning also was dead. W. F. Henning was not a witness at the trial. It appears that he had left the country for parts unknown long prior to this trial. The only direct evidence appearing in the record, touching the relationship of Arnold to the defendant company, is the statement of the witness Richman that Mr. Arnold said to him:

" 'I am agent of the company that carries this insurance, and I will bring the policy to you later.' The next day he brought the policy to me with the mortgage clause endorsed. This was the day the mortgage was executed or immediately after. The policy was delivered to me by Arnold."

We feel that we are justified in saying that Arnold was the agent of the company in some capacity, either soliciting

agent or recording agent. Touching the question of Arnold's knowledge of the ownership of the property in question, the record discloses that the deed from W. F. Henning to Lulu R. Henning was dated August 2, 1902, and was duly filed for record in the office of recorder of deeds in the county on September 16, 1902; that the acknowledgment of this deed was taken before Arnold as notary public; that at the time this loan was made by the plaintiff to Mrs. Henning, and at the time the policy of insurance was delivered to her attorney with the mortgage clause attached, Arnold brought an abstract of the property and delivered it to plaintiff's attorney; that the abstract was continued by Arnold down to the date of its delivery to the plaintiff's attorney; that the continuation was in Arnold's handwriting; that the conveyance to Lulu R. Henning, as it appeared upon the abstract, was in the handwriting of H. H. Arnold. Arnold was the local agent for the defendant company, and was also the agent of Mrs. Henning in procuring this loan, and acted for her in securing the loan from the plaintiff, and knew that the insurance was demanded as additional security for the loan. The policy of insurance bears date of November 28, 1904. The property was destroyed by fire on the 9th day of February, 1908. A premium of $9.00 was paid for the policy for the term of five years. The policy would expire on November 28, 1908.

Neither the plaintiff nor her attorney knew that the policy of insurance was in the name of W. F. Henning. Though delivered to plaintiff's attorney, it was not examined by him or her, further than to see that the mortgage clause was attached. Arnold was then acting for the company. He procured the mortgage clause to be attached to the policy, making the loss, if any, payable to the plaintiff as her interest might appear. While representing the company, he knew that plaintiff was taking this policy as additional security for her loan. He knew, at that time, that Lulu R. Henning was the owner of

2. INSURANCE: condition of title: knowledge of company through agent: sufficiency of evidence.

the property. He must have known that the policy was made payable to her husband, and yet, though representing the company, he did not disclose this fact to the plaintiff. Plaintiff took it in good faith, believing that the policy thus delivered afforded her additional security for her loan, and did not learn of the objection now urged by the defendant to the policy until after the loss occurred.

It is a general rule that the knowledge of an agent of an insurance company as to all matters which come within the scope of his general employment is the knowledge of the company. Insurance companies, like other corporations, necessarily act through their agents. The agents are the eyes and ears of the company, through which it must receive information, if at all. Knowledge which comes through these avenues to the company is its knowledge. As a legal entity, the only information or knowledge it can acquire is through these agencies. As the knowledge of the agent is the knowledge of the company, it is bound thereby. There is no distinction in this state between soliciting and recording agencies. See Secs. 1749 and 1750 of the Code of 1897.

It is the misfortune of the company if it has a negligent or careless agent, and not the fault of the assured. If the agent of the company knows of facts which, at the inception of the contract of insurance, would render the security paid for of no avail to the insured, the company is bound by such knowledge, and if he fails to communicate this knowledge to the company, the insured, in the absence of fraud, ought not to be bound by such failure. Where a fact which would constitute a breach of a condition precedent to any liability of the company on the policy is fully known to its agent, local or general, who is authorized to consummate the contract of insurance, the agent's knowledge is the knowledge of the company, and his act in executing the policy as a valid completed contract is an exercise of the power of the company, and constitutes a waiver by it of such condition precedent, estopping the company from claiming a forfeiture for breach

of condition. See *Farnum v. Phoenix Ins. Co.*, 83 Cal. 246 (17 Am. St. 233). See, also, *Manhattan Fire Ins. Co. v. Weill*, 28 Gratt. (Va.) 389 (26 Am. R. 364). In this last case it is said, quoting from *Bidwell v. Northwestern Ins. Co.*, 24 N. Y. 302:

"Indeed it is not easy to perceive why an insurance company, by reason of the formal words or clauses (of a general and comprehensive nature) inserted in a policy intended to meet broad classes of contingencies, should ever be allowed to avoid liability on the ground that facts of which the company had full knowledge at the time of issuing the policy were then not in accordance with the formal words of the contract, or some of its multifarious conditions. If such facts are to be held a breach of such a clause, they are a breach *eo instanti* of the making of the contract, and are so known to be by the company as well as the insured. And to allow the company to take the premium without taking the risk would be to encourage a fraud. It would, as a legal principle, be equivalent to holding that a warranty of the soundness of a horse is a warranty that he has four legs, when one has been cut off."

See also *Insurance Co. v. McDowell*, 50 Ill. 120 (99 Am. D. 497).

As has been said, the reason that notice to an agent is held notice to his principal is because it is the agent's duty to give the principal notice of the facts, and it will be presumed that he has done so. This is true whenever the notice is connected with the subject-matter of the agency. See *Jordan v. State Ins. Co.*, 64 Iowa 216, in which it is said:

"It has been determined by this court that an insurance company issuing a policy and receiving the premium thereon, with knowledge of facts which are breaches of the warranties by the assured, and of the conditions of the policy, will be

estopped to deny the validity of the instrument, and will be regarded as having waived the violated conditions.''

W. F. Henning did have an insurable interest in this property. It was his homestead. True, he was not the sole and unconditional owner of the property. Can the company avoid liability because of this condition of the policy, when, through its agent, it knew just what interest W. F. Henning had in the property insured? Even assuming that it was the purpose and intent of the company to issue the policy to W. F. Henning,—that he was the party intended to be insured by the policy,—that his interest in the property was the interest intended to be covered by the policy,—yet, through its agent, it consented to the mortgage and endorsed upon the policy so issued a provision consenting to the mortgage and providing that the loss should be payable to the mortgagee as her interest might appear. It knew, through its agent, at the time that it consented to this mortgage, and to the mortgage clause which was attached to its policy, that the plaintiff was accepting the policy, with the mortgage clause attached, for the purpose of additional security for the loan made, and said, ''Permission is granted for encumbrance upon the real property *insured* in this policy, not to exceed the principal sum of $550.00, and loss, if any, is made payable first to Kate D. Funk, mortgagee, as her interest may appear.''

There was, in this, mortgage clause, an affirmative assertion that the property was insured in the policy. True, it is said, ''Subject to the conditions of the policy.'' The condition here invoked to defeat the policy is that W. F. Henning was not the sole and unconditional owner of the property. The fact is that he had a homestead interest in the property. The fact is that the company insured this interest to the amount of $500. The fact is that the company knew, through its agent Arnold, that he had only a homestead

3. INSURANCE: "insurable" interest: homestead in property.

interest in the property. The company cannot, by inserting in the policy that it is at its inception void, because he is not the unconditional owner, accept the premium for the insurance, guarantee indemnity, and then say, "We knew that he was not the unconditional owner; we knew that the only insurable interest he had in the property was that of a homestead. We inserted in the policy a condition directly opposing the fact, as it was known to us at the time, and thereby we have defeated the policy." That is to say, "We issued you a policy, Mr. Henning; we received your money; we knew that the clause stated in the policy, in view of the facts which we then knew, made the policy absolutely void *eo instanti* upon its delivery; we took your premium, but we took no risk, and are not liable under it for the loss."

There is no evidence in this record as to the value of the homestead interest in the property. Under Sec. 1742 of the Code of 1897, the amount stated in the policy is prima-facie evidence of the insurable value of the property at the date of the policy. See *Wensel v. Insurance Assn.*, 129 Iowa 295. At the time the company issued its mortgage clause, it knew that the mortgage was executed by the party named in the policy of insurance, and his wife, Lulu R. Henning, and knew that Lulu R. was then the owner of the fee title; that the assured had only a homestead interest, and was not the unconditional and sole owner.

Upon this question, see *McMurray v. Capital Insurance Co.*, 87 Iowa 453. In this case, the policy contained a warranty that the insured was the unconditional owner of the property, when, in fact, he had only a contract for a deed. The company sought to defeat recovery upon the policy after loss because of this condition of the policy. It appeared, however, that the recording agent issued the policy with knowledge of the fact that the insured was not the sole and unconditional owner, and the company was held bound. See also *Carey v. Home Ins. Co.*, 97 Iowa 619. In that case, the court said: "Appellant, with knowledge, through its

agent, of the true state of the title of the insured property, and that it was not entirely unconditional and sole, issued this policy to the plaintiff, who had an insurable interest in the property.'' The property was in fact the homestead only of the plaintiff. There was a condition in the policy that it should be void if the interest of the assured was other than the entire, unconditional and sole ownership. The court said, citing *Lamb v. Ins. Co.*, 70 Iowa 238: ''The defendant knew, when it issued the policy, that the assured did not own the fee simple title to the real estate, and it knew precisely what title he had, and, so knowing, issued the policy. If there was a false statement, the defendant so knew, and must be held to have waived the conditions of the policy in this respect.'' The court said, ''This decision is decisive of the question under consideration.'' See also the following cases: *Fitchner v. Fidelity Mutual Fire Assn.*, 103 Iowa 276; *Gurnett v. Ins. Co.*, 124 Iowa 547, in which it is said: ''The principle is well settled that when an insurance policy contains a condition which renders it void at its inception, and this is known to the insurer, it will be held to have waived such condition by receiving the premium and issuing its policy.'' See *Wensel v. Ins. Co.*, 129 Iowa 295; *Padrnos v. Ins. Co.*, 142 Iowa 199; *Kesler v. Ins. Assn.*, 160 Iowa 374; *Frane v. Ins. Co.*, 87 Iowa 288.

This disposes of the first two errors relied upon by appellant.

On the 21st day of November, 1906, prior to the destruction of the property by fire, plaintiff commenced a suit in the district court upon her note and mortgage, hereinbefore referred to, making W. F. Henning and the heirs of Lulu R. Henning, who had died in the meantime, parties defendant. There was no personal service of the notice of the commencement of this action, or of any proceedings thereunder served upon W. F. Henning, the assured. The notice to him was issued, but never served,

4. INSURANCE: forfeiture: foreclosure "with knowledge of insured": service by publication: strict construction of policy.

the sheriff certifying that he could not be found within the county. There was an affidavit filed in the case that he was a nonresident, and that personal service could not be made upon him. Notice thereupon was published as required by law, and this is the only notice, so far as the Hennings are concerned. There is a provision in the policy to this effect:

"If, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy, by virtue of any lien or encumbrance thereon, this policy shall be void."

Defendant seeks to avoid the policy on this ground. It will be noted that the provision of the policy relied upon is that it shall be void in the event that foreclosure proceedings are commenced, or notice of sale given, with the knowledge of the insured. W. F. Henning was the insured. There was no personal service of any notice upon him in the suit. There is no evidence that he had any knowledge of the commencement of this suit. Defendant, having prepared this policy and these conditions upon which a right to forfeiture is predicated, must be held to have chosen the words advisedly, and must be held to have used the word "knowledge," as distinguished from constructive notice, advisedly, with the intent to limit the right of forfeiture to those cases in which the insured had knowledge of the commencement of the foreclosure proceedings, or—what has been sometimes held equivalent—actual notice. That the word "knowledge" as used in the contract means actual knowledge, as distinguished from constructive knowledge or constructive notice, see *Fidelity & Casualty Co. v. Gate Natl. Bank*, 25 S. E. (Ga.) 392. That knowledge and notice are not synonymous or interchangeable, see Words & Phrases, Vol. 5, p. 3941.

Policies of insurance of this character are strictly construed against the company. If the company had intended by this provision to cover cases in which foreclosure proceedings were commenced without the knowledge of the

assured, in his absence, and without notice to him, they could have so said; but they limited the right of forfeiture to foreclosure commenced with the knowledge of the assured.

However that may be, we are not inclined to believe that it was the intention and purpose of this provision of the policy to defeat the policy in the event foreclosure proceedings were commenced upon a mortgage, to the giving of which the company consented after the issuance of the policy. The foreclosure proceedings did not have the effect of creating any new lien upon the property, but simply of establishing and confirming the lien to which the company had already consented. See 2 Pomeroy, Equity Jurisprudence (3d Ed.) Sec. 592. Upon this point, see *Fitzgibbons v. Ins. Co.*, 126 Iowa 52; see, also, *Greenlee v. Ins. Co.*, 102 Iowa 427.

5. INSURANCE:
forfeiture
under mortgage foreclosure clause:
consent to
mortgage:
effect.

It is next contended that, prior to the destruction of the property, there was a change of possession, in violation of the terms of the policy. On this point, the policy provides: "If any change *other than by death of the insured* takes place in the possession of the property covered by the policy, the policy shall be void."

6. INSURANCE:
forfeiture: prohibited change
of possession:
tenant.

It appears that W. F. Henning abandoned his wife some time prior to the loss,—just when is not shown. We assume from the record, which is very indefinite on this point, that W. F. Henning and his wife were in possession of this property at the time this policy was issued; that W. F. Henning abandoned his wife and left the country. When this occurred does not definitely appear. We assume that she remained in possession of the property up to the time of her death; that whatever change took place in the possession of the property was due to her death, and was made by those who represented the estate.

The allegations of the defendant are that Elmer Jennison was in possession of the property, pursuant to a sale

or contract of sale by the plaintiff. This fact is not shown in the record, nor have we any evidence upon which such a finding could be made. The only evidence that Jennison was ever in possession of the property is the fact that, in the foreclosure proceedings, notice was served upon him as tenant. At any rate, the evidence on this point is too meager to make a finding of fact upon which a forfeiture upon this provision of the policy could be sustained.

We find no error in the record, and the cause is— *Affirmed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.